12 U.S. 371
 8 Cranch 371
 3 L.Ed. 593
 VOWLES AND OTHERS
v.
CRAIG AND OTHERS.
 March 14, 1814
 
 Absent. MARSHALL, Ch. J.
 THIS case, as stated by TODD, J. in delivering the opinion of the Court was as follows:
 
 
 1
 This suit was instituted on the chancery side of the Circuit Court of the United States for the Kentucky district, by the Complainants, now Appellants as the heirs and legal representatives of Mary Vowles formerly Mary Frazer.
 
 
 2
 The bill alleges that in the year 1774 a survey was made for Mary Frazer as heir at law, and only daughter of George Frazer, dec'd. by virtue of the governors warrant and agreeable to the royal proclamation of 1763, for 2000 acres of land in Fincastle county, on Elkhorn creek, the waters of Ohio river. That according to usual and customary allowance, made in this, as well as other military surveys at that time, a considerable quantiy of land over and above 2000 acres, is contained within the actual boundaries. That in the year 1778 whilst the said Mary was a minor, Michael Robinson, as guardian of the said Mary, and who had intermarried with he mother, made a contract with the Defendants Lewis, Joseph and Benjamin Craig's, for the sale of the said 2000 acres of land surveyed as aforesaid for the said Mary at the price of 30s. per acre, amounting to 3000l. which was paid in the depreciated paper currency of Virginia and was of little or no value. That the said Mary was induced to affix her signature to an assignment of the said plat and certificate of survey, which was post-dated so as to bear the appearance of its being executed when she was of full age; in consequence of which Lewis Craig obtained a patent for the said land in his own name and has since conveyed a part thereof to the said Joseph and Benjamin, and under whom the other Defendants derive their titles. The prayer of the bill is to vacate the contract and to decree a re-conveyance of the land, and for general relief.
 
 
 3
 The answers of the Defendants, Lewis and Joseph Craig's, admit the making of the survey, and that it contains a considerable quantity of land within the boundaries more than 2000 acres.
 
 
 4
 They admit the contract with Michael Robinson for the purchase of the said survey; but positively deny that it was made in the year 1778, and aver that it was made in 1779. They deny that the contract was for 2000 acres of land at 30s. per acre, but was for the whole survey at the price of 3000l. They also positively deny that the assignment on the plat and certificate of survey was post-dated or that any fraud, or misrepresentation was practiced or used relative to the transaction.
 
 
 5
 The answers of the other Defendants are deemed immaterial to the investigation of the questions arising in this case.
 
 
 6
 The cause was heard in the Circuit Court upon the bill, answers, depositions and other proofs. The Court decreed the bill to be dismissed with costs; from which decree an appeal was taken to this Court.
 
 
 7
 TAYLOR, for the Appellants.
 
 
 8
 On examination of the evidence exhibited, we are satisfied, that the allegation, that the assignment was made during the minority of Mary Frazer is not sufficiently supported to have authorized the Circuit Court to have decreed a re-conveyance. But we suppose the Complianants were entitled to relief in some shape for the surplus land contained within the survey; either by a decree for the re-conveyance of the surplus, by a pecuniary compensation for it according to its present value or by a pecuniary compensation according to the price at which the land was sold, on which interest should be allowed.
 
 
 9
 No evidence is introduced of the terms of the sale, whether by the acre or in gross, except the survey, assignment, power of attorney and receipt before mentioned, from these it plainly appears that the parties contracted on a supposition that the quantity of land sold and purchased was 2000 acres.
 
 
 10
 The surplus of 700 acres (nearly one third of the whole quantity supposed to be sold) cannot be considered as a small one, such as might arise from inaccuracy of instruments, &c. and therefore within the contemplation of the parties.
 
 
 11
 The remote residence of the vendor, who had but lately attained full age when she sold, precludes the idea of her having any information of the quantity of land to which she was entitled, other than that which was derived from the survey. On her part, therefore, and probably on the part of the purchaser also, the contract was made under an evident mistake respecting the subject of sale. There is nothing discoverable in the contract or exhibits from which it can be collected that the sale was made without responsibility for the quantity, the words, more or less, almost universally used to designate such an intent, are no where to be found.
 
 
 12
 The case presented is that of a contract made under the influence of mistake, in both parties, as to a material and importent part, without fraud or concealment on either side.
 
 
 13
 It is supposed that no difference exists between contracts for the sale of lands, and those of any other description. The same principles apply to all. This doctrine is recognized in the opinion expressed by the Court of appeals in Kentucky, in the case of Young against Craig. In delivering that opinion the Court expressed itself as follows: 'The question in this case is whether Craig who had sold to Young a tract of land containing in its boundaries a surplus, has a right to recover such surplus, or incase it cannot be had, a compensation therefor in money. There is no novelty or peculiarity in the principles upon which questions of this sort depend. In contracts of this kind the same good faith is required, and the same responsibility attaches to its violation, which law and reason prescribes in every description of contracts. If, through fraud or gross and palpable mistake, more or less land should be conveyed than was in the contemplation of the seller to part with, or the purchaser to receive, the injured party would be entitled to relief in like manner as he would be for an injury produced by a similar cause in a contract of any other species.'
 
 
 14
 The same opinion also establishes the principle that in sales in gross as well as in sales by the acre, if the parties have contracted under manifest error as to quantity, the party injured is entitled to relief, unless indeed, the surplus or deficit was small, not more than usual in such cases, and of course supposed to be within the contemplation of the parties. In that case it is true the Court refused to decree compensation for the surplus land sold, because it appeared plainly to have been the intention of the parties to risk the gain or loss, and because the surplus was not more than usual in such sales.* In the case of Young v. Craig, the Court appears to have adopted the principle laid down by Pothier in his treatise on obligations, ch. 1, art. 3, s. 1, title Error, and also by the writers on natural law, 'that an error about a thing, or about its quality, upon prospect of which a man is induced to come to any agreement, renders the agreement or bargain void, for in such case a man is not supposed to have agreed absolutely but upon supposal of the presence of such a thing or quality, on which as on a necessary condition, his consent was founded, and therefore, the thing or quality not appearing, the consent is understood to be null and ineffectual.' Puffendorf's Law of Nature and Nations, b. 1, c. 3, s. 12.
 
 
 15
 On these principles as applied to this case the Complainants would be entitled to compensation, or the contract would be considered as void, unless it was in proof that the surplus was not unusually great, and was not more than may reasonably be supposed to have been in contemplation of the parties. As the consideration of quantity does not appear to have been the operating motive which led to the contract though it certainly influenced the price, according to the principles established by writers on natural law, it would appear that the error of the parties rather afforded a ground for a decree of compensation than for annulling the contract.
 
 
 16
 From an examination of the documents exhibited it will clearly appear that the parties contracted under an opinion that the survey contained only two thousand acres, the survey itself specifies that quantity. The power of attorney to Joseph Craig describes the land as 2000 acres and the receipt of Michael Robinson for the last payment states it expressly to be in full for 2000 acres of land the property of Mary Frazer. There is not an expression used which shews an intention on either side to make a risking bargain.
 
 
 17
 No evidence appears in the record to shew that military surveys do usually contain surplus lands, and it is supposed without such proof the Court cannot take judicial notice of such an allegation.
 
 
 18
 But if the Court should recognize it, must it not also be admitted that the surplus in this case (one third) is much more than is usual. The influence of error on the contracting parties being proved, it lies on the Defendants to bring themselves within the exceptions stated in the case of Young v. Craig, by the exhibition of satisfactory evidence on those points, this has not been done.
 
 
 19
 If the Complainants are entitled to relief the next enquiry is, how it should be granted. The object of the parties being a sale and purchase of 2000 acres of land, the contract being made for that quantity only, could Lewis Craig be compelled to receive and pay for more? Let it be supposed that he had made an improvident bargain, that the lands were not worth the price he gave or that since the sale they had greatly depreciated in value, Mary Frazer or her representatives could, on no principle of equity, take advantage of her own error to require payment for a greater quantity of lands than had come within the contract, and Lewis Craig might relieve himself by a conveyance of the surplus land.
 
 
 20
 As Lewis Craig was not exposed to the risk of depreciation in value, on principles of reciprocity Mary Frazer and her representatives should be placed in the same situation, and should be entitled to a specific re-conveyance, so far as it can be had without affecting the rights of others. It appears from the proceedings that Lewis Craig is still in possession and the owner of a part of this land, and that Joseph Craig who was concerned in the purchase, holds another part; so far as these extend, a specific re-conveyance may be decreed. As to the other Defendants who appear to have been purchasers, and who probably had not notice of the latent equitable claim of the Complainants so as to affect them, it is not contended that they can be compelled to convey. As to the quantity deficient after the conveyance of the lands held by Lewis and Joseph Craig, a decree for pecuniary compensation according to the present value, if the principles before stated are correct, is the appropriate relief. If the Court should be of opinion that the Complainants are entitled to their decree in respect to the surplus land, but should not consider the principles before stated correct, as to the manner in which it should be granted, no alternative seems to remain but that of adopting the original price (said to have been $5 per acre, and from calculation appearing to have been so,) as the measure of compensation. The purchasers having had the use and received the rents and profits of the land should, as an equivalent, be decreed to pay interest, and an account should be decreed to ascertain the value of the paper money on the 20th December, 1779, and the interest which has accrued.
 
 
 21
 The length of time which has been suffered to intervene may perhaps be considered as amounting to a waiver of the Complainants equitable right, and be made an objection to a decree for relief in any shape.
 
 
 22
 In reply to this the following facts, which appear on the record, are stated.
 
 
 23
 That the Defendants soon after their purchase removed to Kentucky, where they continued to reside, and that Mary Frazer and her representatives always resided in, or near Fredericksburgh, in Virginia.
 
 
 24
 BLEDSOE, for the Appellees.
 
 
 25
 Craig purchased Mary Frazer's interest, be it much or be it little. Her interest was all he purchased, and all he could obtain. And as evidence of it she assigned the plat and certificate of survey, that the patent might issue to Craig for whatever the survey contained. There was no mistake here. If Craig has got more land from the commonwealth of Virginia than he ought to have had, is Mary Frazer or her representatives to step into the place of the commonwealth to correct the error or the fraud? Or is she to step into Craig's place to defraud that commonwealth or to take advantage of the error of its officer because she once owned 2000 acres of land which she has parted with? Had she carved and granted a definite interest out of her claim, retaining a part, the question might be differently settled. But in this case she would be worse than a volunteer who cannot be compensated in equity. She would be a volunteer mala fide.
 
 
 26
 A Complainant in equity must recover on the strength and soundness of his own title. It is not sufficient that the Defendant is in the wrong; the Plaintiff must have right.
 
 
 27
 If the claim of the Complainants to any part of the land itself were to be sustained, where would you begin on the survey to correct the error? On which end, side, or corner? The beginning and ending corners of a survey are arbitrarily designated by the surveyor when he makes out his plat and cetificate; seldom or never corresponding with the actual stages of process on the ground itself.
 
 
 28
 But as it was clearly the intention of the parties that the whole should be sold, and as the evidence of the whole was transferred, the utmost that the Complainants could, in any event conscientiously ask, would be, that the Defendants should refund a part of the purchase money, in proportion to the surplus, with interest, which must be reduced by the scale of depreciation.
 
 
 29
 TODD, J. after stating the case, delivered the opinion of the Court as follows:
 
 
 30
 In the written arguments submitted by the parties, it is admitted by the counsel for the Appellants that the evidence exhibited, does not support the allegation in the bill, that the assignment was made during the minority of Mary Frazer. This admission renders it unnecessary for the Court to go into a minute examination of the evidence; it will be sufficient to observe that the testimony is clear and satisfactory on this point; and, therefore, there is no pretence for setting aside the contract and decreeing a re-conveyance of the land. But it is contended that the Complainants are entitled to relief in some shape for the surplus land contained within the survey; either by a decree for the re-conveyance of the surplus land; by a pecuniary compensation for it according to its present value; or by a pecuniary compensation according to the price at which the land was sold, on which interest should be allowed.
 
 
 31
 This argument assumes for its basis, that there existed a mistake as to the thing sold. If there was a mistake, how did it originate, and who is injured thereby? Was there a mistake? It may be enquired to what quantity of land was Mary Frazer entitled by virtue of the governor's warrant issued in pursuance of the royal proclamation? To two thousand acres. How much did she sell and receive payment for? Two thousand acres. It would appear from this that she had sold and received payment for as much land as she was entitled to. How comes it, that this surplus was included in the survey? From the fraud, design, ignorance or negligence of the surveyor. Who is defrauded or injured thereby? The commonwealth of Virginia, and not Mary Frazer. For what it is asked that compensation shall be made? For land which, by the fraud, design, ignorance or negligence of the surveyor, Mary Frazer might by possibility have been entitled to. Was the sale of this survey of a specific quantity, at a certain price per acre? or was it a sale of a specific tract? The bill alleges it was of the first description; the answers deny it, and say it was of the latter. There is no proof to support the allegation in the bill, unless from the survey, a power of attorney, and the receipt for the purchase money, it should be inferned, that as they relate to 2,000 acres of land, only that quantity was intended to be included in the sale. But this proof is conceived to furnish a very opposite conclusion, the description and designation of the tract of land sold, not as part of a tract, but an entire tract. The answers, being supported by the assignment, that it was a sale of the whole survey, and being also responsive to an allegation as well as to an interrogatory in the bill, must be taken as true and conclusive. When an assignment is made of a plat and certificate of survey, the purchaser takes it subject to the risk of its containing a less quantity than is expressed on its face, and should it contain more he is intitled to it. In the case of Young v. Craig, decided by the Court of Appeals of Kentucky, (a copy of which has been furnished and relied on by each party) the Court say, 'there was, particularly in the sales made at an early period of this country, great liberality of admeasurement frequently allowed by the seller and expected by the purchaser. Where this was the case, to authorize a conclusion, from the surplus contained in the boundaries of a tract, that there was a mistake of quantity, the surplus ought to be greater than was usual in conveyances made about the same period.' Now it appears from a statement in the bill, as well as from the general history of the country, that it was usual and customary to make considerable allowance in military surveys; and it is not shown that the surplus in this is greater than in other surveys made about the same time. Again, in the same case, the Court proceed, 'it would be obviously improper and unjust to lay down any general rule as to the rate of surplus that would justify an inference of mistake which would deserve correction; each case must depend upon its own particular circumstances; whether such an inference would be authorized in the present case, were the sale in question per acre and not in gross, need not be determined since we are of opinion it is of the latter description.' If this reasoning be correct as to conveyances, it will apply with redoubled force to assignments of plats and certificates of survey, where the purchaser takes it subject to the risk of its containing less than it specifies.
 
 
 32
 Mary Frazer or the Complainants can be considered in no other view, than mere volunteers mala fide, and of course not entitled to the aid of a Court of Equity.
 
 
 33
 It seems, as a necessary consequence, if the Complainants are not entitled to the surplus land, they are not to compensation in either of the other modes contended for. Where there is no right there can be no claim to compensation sustained.
 
 
 34
 Decree affirmed with costs.
 
 
 
 *
 The opinion of the Court of appeals in Kentucky in the case of YOUNG v. CRAIG, was as follows:
 The question in this case is whether Craig who had sold to Young a tract of land containing in its boundaries a surplus, has a right to recover such surplus, or in case it cannot be had, a compensation therefor in money.
 There is no novelty or peculiarity in the principles upon which questions of this sort depend. In contracts of this kind the same good faith is required. And the same responsibility aftaches to its violation, which law and reason Prescribe in every description of contract.
 If through fraud, or gross and palpable mistake, more or less land should be conveyed than was in the contemplation of the seller to part with of the purchaser to receive, the injured party would be entitled to relief in like manner as he would be for an injury produced by a similar cause in a contract of any other species.
 In this case however there is no evidence of fraud; and the only ground, from which an inference can be deduced that there was such a mistake as would justify the interference of the Court for the purpose of correction, is the surplus contained in the boundaries described by the deed. Whether this ground be sufficient to justify such an inference depends upon the nature and terms of the contract.
 Contracts for the sale of land may be considered of two descriptions. 1st. Where the sale is of a specific quantity, which is usually denominated a sale by the acre, and 2dly, where the sale is of a specific tract by name or description, each party risking the quantity; and this latter, for sake of brevity, is sometimes called a sale in gross.
 It is evident that in a sale per acre, much less variation from the quantity intended to be conveyed would afford evidence of a mistake which would justify the interposition of a Court to correct it, than would be sufficient for that purpose in a sale of the other description. But even in a sale per acre, as from the roughness and uneveness of the ground from the variation of instruments and from the different results that will necessarily be produced by different surveyors operating with the same instruments, it is impracticable to ascertain the quantity with perfect precision, a small deficit or surplus, however exactly the parties may have intended to be confined to a specific quantity, would not justify an application to a Court of justice for relief. In many cases, however, of sales of this sort, the parties did not intend to be very scruplously exact with respect to the quantity. There was particularly in the sales made at an early period of this country great liberality of admeasurement frequently allowed by the seller and expected by the purchaser. Where this was the case to authorize a conclusion from the surplus contained in the boundaries of a tract, that there was a mistake of quantity, the surplus ought to be greater than was usual in conveyances made about the same period and with the same intention of allowing liberal admeasurement. But as in some sales of an early period, and in perhaps a great majority of those of a more recent date, such a liberality of admeasurement was not intended by the parties it would be obviously improper and unjust to lay down any general rule as to the rate of surpluses that would justify an inference of a mistake which would deserve a correction. Each case must depend much upon its own particular circumstances. Whether such an inference would be authorized in the present case were the sale in question per acre, and not in gross, need not be determined since we are of opinion it is of the latter description.
 The deed of conveyance must be taken as conclusive evidence of the terms of sale unless it had been shown that language not comporting with the true intention of the parties had been inserted through fraud or mistake, of which there is not the slightest indication in this case.
 The deed describes the land by its boundaries and situation, and as 'containing by survey four hundred and twenty-five acres, be the same more or less.' The plain and most obvious meaning of the expressions 'be the same more or less' is that the parties were to ran the risk of gain or loss as there might happen to be an excess or deficiency in the estimated quantity. This it is believed is the sense in which such an expression is uniformly understood by both the learned and the unlearned. This idea is not repelled by the expression of the quantity of acres; on the contrary it rather derives strength from the manner in which the quantity is mentioned, for it plainly indicates that the expression of quantity was used as matter of description only and that it was the intention of the parties not to be confined to a precise and specific quantity.
 We do not mean to be understood that in a sale of this kind the surplus or deficit might not be so great as to authorize an inference that it had been produced by fraud or mistake; but in this case where the estimated quantity was 425 acres and the largest quantity which any subsequent survey has made it is 481 the surplus does not appear so great as not to be within the reasonable limits of a risking bargain of this kind. See in support of this doctrine . . .. Sugden 225, 6—1 Call. 301. We are therefore of opinion that the decree of the Circuit Court in favor of Craig was erroneous and must be reversed with costs.